Hyman Barshay, J.
This is an application in the nature of a writ of error coram nobis to vacate and set aside a judgment, dated December 10, 1953, convicting the defendant, on his plea of guilty, of the crime of robbery in the second degree, unarmed, and sentencing him to a term of not less than 4 and not more than 10 years, to be processed through the Elmira Reception Center. The defendant claims that when the late Judge Carmine J. Marasco imposed the aforesaid sentence, he failed to keep a promise made by him to the defendant’s wife that the sentence would be somewhere between 1 and 5 years and that the defendant would be sent to the Elmira Reformatory. A hearing was held at which the following was adduced. The defendant’s wife testified that on October 14, 1953, the day that the defendant pleaded guilty, she and the defendant’s uncle spoke to Judge Marasco in his chambers; that she told the Judge that she and the defendant were going to be married; that he was only 18 years old at the time and had never been in trouble before; that Judge Marasco told her that if the defendant pleaded guilty to robbery in the second degree, unarmed, he would sentence the defendant to the Elmira Reformatory for a term of 1 to 5 years because of his age; that he would make a notation to that effect and that she saw him write something on a piece of paper. She then told the defendant, who was waiting in the corridor, about her conversation with Judge Marasco. On that day, the defendant pleaded guilty as aforesaid; that she was not present when the defendant was sentenced, and did not learn until 10 days later what sentence had been imposed. Thereafter she neither spoke to nor wrote Judge Marasco about his promise. She never told the defendant’s lawyer about this alleged promise. She did nothing until she testified in the instant application. Paul D’Ambrosio, the defendant’s uncle, testified he was present when Judge Marasco made the afore-mentioned promise to the defendant’s wife. He was not present when the defendant was sentenced. When he learned that Judge Marasco failed to keep his promise, he did nothing. The defendant testified that after he entered the plea of guilty, he was continued on bail; that he and his wife had planned to be married on November 7, 1953; that prior to pleading guilty, he had a conversation with his wife and his uncle, at which time she told him about the promise Judge Marasco had made to her; that he wanted to go to trial but after she pleaded with him, and in reliance upon the promise, he pleaded guilty. When Judge Marasco imposed the sentence upon him, he heard the word 11 Elmira ’ ’ and thought that he ] was going to the Elmira Reformatory; that this was the first j time he had ever been involved with the law and did not know *459 the difference between Elmira Reception Center and Elmira Reformatory. He started this proceeding in May of 1960, and thereafter retained counsel. Although he admits his guilt, he now states that if the promise, as alleged, were not made by Judge Marasco, he would not have pleaded guilty.
The records indicate that the notice of motion and supporting affidavit are dated August 12, 1960, and it is conceded that the motion papers were received by the District Attorney on August 13, 1960. Judge Marasco died on July 2, 1960. The defendant ordered the minutes of the sentence before Judge Marasco’s death. He did not appeal from the judgment of conviction. He did not write to Judge Marasco advising him of his failure to keep his promise. The minutes of plea were received in evidence and contained the following colloquy: ‘1 By the Court: Q. Before you plead guilty, I want you to understand further that I am making no promise to you regarding the sentence you will receive in this case. Is that understood? A. Yes, your Honor. Q. Had your lawyer or the District Attorney or the police officer or anybody else made any definite, specific promise to you regarding the sentence you will receive in this case should you plead guilty? A. No, your Honor. Q. In other words, has anybody guaranteed you any sentence? A. No, your Honor.” Judge Marasco’s Trial Calendar for October 14, 1953, contains no notation that a promise was made as to sentence. It is significant to note that on October 7, 1954, the defendant wrote a letter to Judge Marasco, which is attached to the file of the Probation Department, in which he asked the Judge if there is any chance of his sentence being reduced because his wife “ is having a rough time taking care of our child. She is on relief now. I want to be home and take care of both of them.” No mention is made in this letter that Judge Marasco failed to keep a promise allegedly made to the defendant’s wife. In view of the foregoing, this court is constrained to find that the instant application is based upon a claim which is not substantiated by any credible proof. The application is, therefore, denied. Let the District Attorney submit an order to that effect and serve a copy of it, together with notice of entry thereof, on the defendant’s attorney and on the defendant, by mail, at the institution where he is presently confined.